COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



|  |  |  |
|---|---|---|
| B.B., | § | No. 08-14-00178-CV |
| Appellant, | § | Appeal from the |
| v. | § | 65th Judicial District Court |
| TEXAS DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES, | § § | of El Paso County, Texas |
| Appellee. | § § | (TC# 2013DCM0923) |

## **O P I N I O N**

B.B.[1] appeals the trial court's order terminating his parental rights to his three minor children. In two issues, Father, contends the evidence presented was legally and factually insufficient to establish that termination was in the children's best interest. We affirm.

## BACKGROUND
### FACTUAL HISTORY
### *Life in Odessa and Move to El Paso*

Appellant, B.B. is married to his wife, R.A. At the time of the final hearing at issue in this appeal, Father and Mother had three children together. Father also had a son from a previous relationship who is not subject to this suit.

Father has a long history of drug use. He began dealing cocaine at age seventeen, near

---

[1]Pursuant to TEX.R.APP.P. 9.8, we shall refer to the children's mother, R.A., as "Mother" and the subject children's father, B.B., as "Father."

the time he met his wife. At the time he met his wife, Father smoked about four blunts, or seven grams, of marijuana a day. His usage increased to six blunts a day after the mother of his first son abandoned their son. He admitted to working under the influence at a restaurant during the time he was caring for his first son. He then obtained a job at a different restaurant, during which time he cut back on marijuana use, but continued selling cocaine on the side.

Father has been convicted of driving without a license numerous times and in February 2007 was sentenced to seventeen days in jail for driving with a suspended license. In January 2007, the 70th District Court in Ector County, Texas, placed Father on probation for possession of between one and four grams of cocaine, a third-degree felony. In May 2009, Father was convicted of marijuana possession and sentenced to forty-nine days in jail. Father admitted that the last two years of his probation for the cocaine offense, he restarted smoking marijuana, stopping in time to come up negative on drug tests.

Eventually, Father was caught violating the terms of his probation by smoking marijuana and elected to serve a staggered two-year prison sentence rather than continue on probation. When his oldest child turned three months' old, Father went to prison for a period of about four months. Mother testified that Father was then released for a period of time before serving at least another six months. Father testified that he served about a year in prison total, and that during that time, he did not see his oldest child because the prison was in Amarillo, several hundred miles away from Odessa.

After Father was released from prison, he and Mother moved from Odessa to El Paso in early 2012. Father and the family lived in a trailer in Northeast El Paso that was in acceptable condition at first, but eventually, three holes opened up in the floor that he had to repair with plywood. The holes were big enough that the children could have fallen through, so he repaired

2

those holes himself "immediately." While in El Paso, Father began using powder cocaine and selling both powder and crack cocaine. Mother testified that she and Father used cocaine and marijuana together, and that both of them had taken care of their children while under the influence of drugs.

### *Child Protective Services Investigation Begins*

Texas Department of Family and Protective Services ("DFPS") caseworker Myrna Calzada testified that she received an anonymous tip alleging that Father and Mother's children were being medically neglected and using blankets as diapers; that there was no food or supplies at the home; and that the home itself was in poor repair. A DFPS investigator went to the home on February 5, 2013, and found house was unsafe, dirty, and lacked food and diapers for the children. Calzada testified that Father's youngest child had a rash that was never treated in accordance with doctor's orders. The oldest child also had marks around his eye. Calzada maintained that the "big issue in the home" was Father and Mother's drug use. Mother took an oral drug test at DFPS's request and tested positive for marijuana and cocaine. Father submitted to a hair follicle drug test and also failed. DFPS subsequently removed the children from the home and filed a suit affecting the parent-child relationship ("SAPCR") for conservatorship and termination.

### *Post-Removal Conduct*

Calzada formulated a treatment plan that the court ordered Father to follow. He failed to comply with the court ordered plan. Father testified that following the children's removal, he began increasing his cocaine intake, and that he and Mother would continue to use cocaine together. In March 2013, Jane Leal, interviewed and assessed Father following a referral from DFPS. Based on Father's criminal history and admitted past drug use, she recommended he

3

receive inpatient treatment at Aliviane, a drug rehabilitation facility. He began inpatient treatment on April 8, 2013. He also voluntarily agreed to be supervised by the drug court, although he failed to call in or attend proceedings as required. Father repeatedly tested positive for marijuana and cocaine while at Aliviane. He conceded the first tests were accurate but contested the validity of his most recent drug tests, and his attorney ordered additional, independent drug tests. Those tests also showed positive results. Due to the positive urine analysis, Aliviane discharged Father in May 2013. Leal then recommended Father participate in outpatient treatment programs in June 2013. Father failed to attend that program.

At some point, Father and Mother then moved into an apartment together. However, the couple's car was stolen, and Father injured his ankle and was unable to work. As a result, the couple could not pay their rent, were evicted from the apartment, and became homeless in August 2013. Father admitted that he did not contact Calzada, his caseworker, during that time because his "pride is too high" and because he did not get along with her. Father also admitted that while homeless, he continued to use cocaine, placing a higher value on it than his own children. Father and Mother remained homeless until sometime around October 2013, when a police officer took them to a homeless shelter.

Father then began living at the Opportunity Center, a homeless shelter in El Paso. The Opportunity Center provided mental health services through the PATH program. Father did not participate in that program. Father admitted to continuing to use cocaine through December while at the Opportunity Center.

### SAPCR Hearings Begin

The initial hearing on February 5, 2014, Father submitted to a hair follicle drug test, which showed positive for cocaine and opiates. Father conceded the test was correct because he

4

had touched cocaine while selling it, but he denied actually using it. He also admitted to having smoked marijuana in either January or February and to have taken a prescription painkiller without a prescription.

On February 19, 2014, Father met with counselor Molly Luevanos, who recommended he begin outpatient classes and scheduled a follow-up appointment on February 27. Father did not attend the follow-up appointment because he was out of town for one month. Father obtained temporary employment working with a traveling carnival making $600.00 a week from March to April 2014. He failed to inform his caseworker or Luevanos that he was leaving town or let her know when he had returned.

Father attended another session with Luevanos on April 17. Leuvanos testified that Father had attended two parenting classes and some individual and group therapy sessions, but stated that Father was not receiving individual therapy sessions at Aliviane. Father admitted that he only began taking these classes two weeks before the April 3rd hearing in this case.

As of April 2014, the three children at issue in this suit were four years' old, two years' old, and one year' old, respectively. At a hearing on May 6, Calzada testified that the children were too young to articulate whether they wanted to stay with Father, but that on only one occasion was one child upset to be leaving Father. All other times, the children readily returned to their foster mother, whom they referred to as "grandma." Mother testified at a previous hearing that one child was in speech therapy and another was in physical therapy, and that since the time they were placed in foster care, both children have undergone improvement in their conditions. Calzada also testified that Father missed thirty-nine scheduled visits with his children since DFPS took custody. Father admitted that there was a four-month period in which he was not able to make visits with his children because he did not have a car.

5

Father was still residing at the homeless shelter at the time of the May 6 hearing. He hoped to continue working for the carnival and hoped they would extend him a formal contract. He testified that if the trial court permitted him to leave El Paso to find work, he would do so. Father submitted to a final hair follicle drug test at the May 6 hearing, maintaining the test would be negative. Father again tested positive for cocaine at the final hearing on May 27.

## PROCEDURAL HISTORY

The trial court entered an order terminating Father's parental rights. The order further named the Department as managing conservator and Mother as possessory conservator. This appeal followed.

## DISCUSSION

The Texas Legislature has established a two-prong test for determining when parental rights may be terminated. First, the State must establish the existence of one or more statutory grounds for termination set out in TEX.FAM.CODE ANN. § 161.001(1)(West 2014). Second, termination of parental rights must be in the best interest of the child. TEX.FAM.CODE ANN. § 161.001(2). Father concedes that from a legal standpoint, he cannot attack the legal sufficiency of the trial court's rulings that he (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children (Subsection D); engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the children (Subsection E); failed to comply with the provisions of a court order that specifically established the actions necessary to obtain return of the children (Subsection O); and used a controlled substance in a manner that endangered the health and safety of the children and failed to complete a court-ordered substance abuse treatment program (Subsection P).

6

However, Father maintains that although all the adverse rulings on the first prong are germane to assessing best interest under prong two, *see In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002), there was legally and factually insufficient evidence to find, by clear and convincing evidence, that termination of his rights was in the best interest of the children. We disagree.

### *Standard of Review*

Because parental rights are of a constitutional dimension, the State must prove its case by clear and convincing evidence before a parent's rights may be terminated. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). This change in the evidentiary burden at trial triggers a reciprocal change in how legal and factual sufficiency points are treated on appellate review. *Id*. "In a legal sufficiency review, a court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *Id*. at 266. "Evidence that merely exceeds a scintilla is not legally sufficient when the burden of proof is clear and convincing." *State v. K.E.W.*, 315 S.W.3d 16, 20 (Tex. 2010). We presumptively resolve any evidentiary disputes in favor of the finding and disregard all contrary disputed evidence unless a reasonable factfinder could not do so. *In re J.F.C.*, 96 S.W.3d at 266. We are not free to disregard undisputed facts in our analysis. *Id*.

In reviewing a clear-and-convincing-evidence finding for factual sufficiency, we assess whether the record evidence as a whole "is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d at 25. Although we "give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing[,]" we do not presumptively resolve factual disputes in the finding's favor as in a legal sufficiency challenge. *In re J.F.C.*, 96 S.W.3d at 266. Instead, where we

determine "a reasonable factfinder could not have resolved that disputed evidence in favor of its finding[,]" and where "the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction[,]" we must grant an appellant's factual insufficiency point. *In re J.F.C.*, 96 S.W.3d at 266. When we grant a point on factual sufficiency grounds, we "should detail in [our] opinion why [we have] concluded that a reasonable factfinder could not have credited disputed evidence in favor of the finding." *Id.* at 266-67.

### *Best Interest Analysis*

At issue in this appeal is the second prong of the statutory termination test – the best interest of the child assessment. "Although a strong presumption exists that a child's best interest is served by keeping them with their natural parents, that presumption disappears when confronted with evidence to the contrary." *In re A.I.G.*, 135 S.W.3d 687, 692 (Tex.App.--San Antonio 2003, no pet.). In reviewing whether termination is in a child's best interest, we resort to the nine-factor test set out in *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). Those factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parenting abilities of the parties seeking custody; (5) the programs available to assist these persons; (6) the plans for the child by the parties seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions committed by the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions committed by the parent. *Id.* "We need not decide each of these factors against a parent to find that termination is in the child's best interest." *In re A.I.G.*, 135 S.W.3d at 692-93.

In reviewing the *Holley* factors, we cannot say that the evidence was legally or factually insufficient to justify termination of Father's parental rights. Calzada testified that the children are still too young to be able to articulate whether they wanted to stay with their Father, making factor one unhelpful in our analysis. Even where a child is attached to a parent, that factor alone is not dispositive where the parent has engaged in conduct dangerous to the child's well-being. *In re W.S.M.*, 107 S.W.3d 772, 773 (Tex.App.--Texarkana 2003, no pet.).

Thus, we next turn to factors two, three, four, six, and seven, addressing them jointly. All three children are under the age of four, and evidence in the record indicates that two of the children have special needs, particularly speech and physical therapy. At the time of the hearing, Father was homeless and admitted he had nowhere to house the children if given custody. He worked part-time for a traveling carnival, but work was sporadic and he could not say if it would continue. Even if his carnival work did continue on a regular contract basis, living on tour with Father would constitute a hardship for the children, especially given their young age. In terms of parental ability, there was some testimony that Father cared for his children and showed them affection. He also began taking parenting classes two weeks before the final hearing in this case. However, Father also admitted to taking care of his children under the influence of drugs, and repeatedly tested positive for drugs even through the date of the final hearing. Furthermore, at the time the Department took the children into custody, one child was suffering from medical neglect, as a rash had gone untreated. Another child exhibited marks around the eye. Taking these factors in the aggregate, the trial court could have believed that Father could not provide for his children's emotional and physical needs, that his presence would place them in emotional or physical danger, that he lacked the ability to parent well, that his plans for the future were too ill-defined to provide a stable environment, and that his children would be exposed to improper

9

drug influences.

In reviewing factor six, the evidence establishes the presence of several inpatient and outpatient opportunities through the Opportunity Center and Aliviane. Father failed to attend therapy consistently until two weeks before the final hearing. He also failed to comply with the terms of Aliviane's treatment, with court orders, and with the drug court program. Father admitted to a long history and pattern of drug use, which included caring for the children while intoxicated on marijuana and cocaine, and he continued to use and sell cocaine after DFPS removed the children from the home. While testimony does exist to suggest that a person seeking drug treatment may have to make several attempts at treatment before he is successfully rehabilitated, the trial court could also find that his non-compliance with treatment and failure to make earlier attempts weighed in favor of termination. *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009)(evidence of recent improvement "especially of short-duration[] does not conclusively negate the probative value of a long history of drug use and irresponsible choices"). This is especially true in light of the fact that the trial court found the existence of four separate grounds for termination, all of which Father concedes are legally and factually sufficient. *See In re C.H.*, 89 S.W.3d at 28 (statutory grounds may also constitute best interest evidence).

Finally, we turn to the mitigating factors. Father testified that he missed many of the meetings with the children because he did not have a car, as it was stolen. He also became homeless after an injury that rendered him unable to work. The record indicates that Father has been diagnosed with cannabis dependence and exhibits some form of drug addiction. Father's counsel maintains that terminating Father's parental rights would preclude his children from receiving child support, making termination not in their best interests. DFPS counters that Father never actually ever paid child support, and that the only funds the children ever received were

10

garnished from Father's income tax withholdings.

In weighing all these factors and assessing the evidence relevant to these factors, we cannot say the evidence underpinning the termination order is legally or factually insufficient. Father points out that the trial court chose to terminate his parental rights, but not those of Mother, with whom he had engaged in past drug use while caring for the children. In *C.V. v. Tex. Dep't of Family & Protective Srvs.*, 408 S.W.3d 495, 505-06 (Tex.App.--El Paso 2013, no pet.), a mother complained that her parental rights had been terminated, while those of the Father remained intact. There, we stated, "[t]hat the trial judge may have been willing to give the Father a second chance does not require a finding that termination of the mother was not in the children's best interest. We look only to the conduct, behavior, circumstances, and reasons offered by the mother." *Id*. at 506. Here, we must only look to the conduct of Father in determining whether termination of Father's rights was in the children's best interest. Based on the evidence presented in the record, we find that the trial court did not err in determining termination was in the children's best interest. The evidence was legally and factually sufficient to support the findings.

Issues One and Two are overruled. The judgment of the trial court is affirmed.

September 23, 2014

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.
Rivera, J. (Not Participating)

11