**Affirmed and Memorandum Opinion filed October 14, 2014.**



In The

# Fourteenth Court of Appeals

### NO. 14-14-00382-CV

## IN THE INTEREST OF M.S.L. AND L.S.L., CHILDREN

**On Appeal from the 314th District Court
Harris County, Texas
Trial Court Cause No. 2012-06370J**

## M E M O R A N D U M   O P I N I O N

Appellant S.M.L. (the Father) appeals the decree terminating his parental rights to two daughters (the Children). He raises a single issue challenging the sufficiency of the evidence supporting the finding that termination is in the Children's best interest. We affirm.

### I. BACKGROUND

On November 12, 2012, the Texas Department of Family and Protective Services (the Department) filed suit for protection of the Children, M.S.L.

(Michelle), born in 2006, and L.S.L. (Lisa), born in 2009.[1] The Department had received a referral alleging negligent supervision and physical abuse of the Children. In addition to problems with the Mother's mental health, it was alleged the Father had substance abuse issues and he used excessive discipline that left bruises on Michelle. The referral also alleged the Children had witnessed domestic violence in the home. After an emergency hearing on November 12, 2012, the court named the Department temporary sole managing conservator of the Children and they were placed in foster care.

A full adversary hearing was held November 20, 2012. The court found sufficient evidence to support the removal. *See* Tex. Fam. Code § 262.201(b) (listing the required findings for removal and protection of the child). The Father was present at the adversary hearing, and he was ordered to undergo drug testing. The test results were positive for amphetamine, methamphetamine and hydrocodone.

At the status hearing on January 8, 2013, the court found that the Father had been provided a family service plan and he understood its requirements. He also understood his parental rights could be restricted or terminated if he did not show he could provide the Children with a safe environment. The tasks in the Father's service plan included that he submit to random drug tests, obtain and maintain suitable housing, participate in individual counseling including a psychological evaluation and any recommendations therefrom, parenting education classes, domestic violence classes, and attend all court hearings and visitations with his children. An additional temporary order entered the same day added that the Father was required to participate in a substance abuse program, complete a drug and

---

[1] To protect the identities of the minors, we have not used the actual names of the Children or parents. *See* Tex. R. App. P. 9.8. The Mother relinquished her parental rights and has not appealed.

alcohol assessment and any recommendations made by the assessment, remain drug free, refrain from criminal activity, maintain stable employment, and complete all services outlined in his family service plan. The Father was ordered to take a drug test at the conclusion of the hearing, but he left before the test was performed.

The first permanency hearing was held April 9, 2013. Both the Department's caseworker and the Father testified. The Department's caseworker assigned to this case, Valencia Green, testified that the Children's current placement met their physical and emotional needs and it was in their best interest to remain in that placement. The court ordered the Father to undergo urinalysis and hair follicle tests that day. The tests were positive for Vicodin and alcohol.

Trial to the court was held on multiple, non-consecutive days. Specifically, trial commenced on November 19, 2013, and was reset to March 18, 2014 for drug tests on the Father and the Mother and for the Child Advocates representative to obtain additional information for her home studies on potential placements. The trial was reset again before concluding on April 22, 2014. The Father testified on both November 19 and April 22. On April 22, Bruce Jefferies, of the National Screening Center, provided expert testimony about the Father's positive drug tests. The Department's caseworker also testified about the Children's status and the Father's interaction with the Department during the pendency of the case. Finally, the Child Advocates representative, who was appointed guardian ad litem for the Children, testified about her observations and recommendations.

At the close of trial, the court granted the Department's request to terminate the Father's parental rights to the Children. The trial court signed a decree of termination on May 12, 2014, and the judgment recited that the Father's parental rights were terminated based on findings that termination is in the Children's best

interest and that the Father committed acts establishing the predicate termination grounds set out in subsections E, O, and P of Texas Family Code Section 161.001(1). *See* Tex. Fam. Code §§ 161.001(1)(E), (O), & (P); 161.001(2). The Department was appointed sole managing conservator of the Children. The Father filed a timely notice of appeal.

## II. BURDEN OF PROOF AND STANDARDS OF REVIEW

Involuntary termination of parental rights is a serious matter implicating fundamental constitutional rights. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *In re D.R.A.*, 374 S.W.3d 528, 531 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Although parental rights are of constitutional magnitude, they are not absolute. *In the Interest of C.H.*, 89 S.W.3d 17, 26 (Tex. 2002) ("Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right.").

Due to the severity and permanency of the termination of parental rights, the burden of proof is heightened to the clear and convincing evidence standard. *See* Tex. Fam. Code § 161.001; *In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex. 2002). "Clear and convincing evidence" means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code § 101.007; *accord In re J.F.C.*, 96 S.W.3d at 264. This heightened burden of proof results in a heightened standard of review. *In re C.M.C.*, 273 S.W.3d 862, 873 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

Parental rights can be terminated upon proof by clear and convincing evidence that (1) the parent has committed an act prohibited by section 161.001(1) of the Family Code; and (2) termination is in the best interest of the child. Tex.

Fam. Code § 161.001(1), (2); *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). Only one predicate finding under section 161.001 is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).

In reviewing the legal sufficiency of the evidence in a parental termination case, we must consider all the evidence in the light most favorable to the finding to determine whether a reasonable fact finder could have formed a firm belief or conviction that its finding was true. *In re J.O.A.*, 283 S.W.3d at 344; *In re J.F.C.*, 96 S.W.3d at 266. We assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so, and we disregard all evidence that a reasonable fact finder could have disbelieved. *In re J.O.A.*, 283 S.W.3d at 244; *In re J.F.C.*, 96 S.W.3d at 266.

In reviewing termination findings for factual sufficiency of the evidence, we consider and weigh all of the evidence including disputed or conflicting evidence. *In re J.O.A.*, 283 S.W.3d at 345. "If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* We give due deference to the fact finder's findings and we cannot substitute our own judgment for that of the fact finder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). The fact finder is the sole arbiter when assessing the credibility and demeanor of witnesses. *Id.* at 109. We are not to "second-guess the trial court's resolution of a factual dispute by relying on evidence that is either disputed, or that the court could easily have rejected as not credible." *In re L.M.I.*, 119 S.W.3d 707, 712 (Tex. 2003) (explaining that in a termination case, an appellate court should not reweigh disputed evidence or evidence that depends on a witness's credibility).

5

### III. UNCHALLENGED PREDICATE FINDINGS

The Father has not challenged the three predicate grounds for termination found by the trial court. As relevant to these proceedings, section 161.001(1) provides termination is warranted if the trial court finds by clear and convincing evidence, in addition to the best interest finding, that the parent has:

> (E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;
>
> (O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child;
>
> (P) used a controlled substance, as defined by Chapter 481, Health and Safety Code, in a manner that endangered the health or safety of the child, and:
>
>> (i) failed to complete a court-ordered substance abuse treatment program; or
>>
>> (ii) after completion of a court-ordered substance abuse treatment program, continued to abuse a controlled substance.

Tex. Fam. Code § 161.001(1)(E), (O), & (P).

Unchallenged findings of fact are binding unless the contrary is established as a matter of law or there is no evidence to support the finding. *See In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013). There is evidence in the record to support each of the findings. As such, we treat them as conclusively established.

### IV. BEST INTEREST OF THE CHILDREN

Notwithstanding three statutory bases for termination, the Father asserts termination of his parental rights is not in the Children's best interest. There is a

6

strong presumption that the best interest of the child is served by keeping the child with the natural parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). The prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. Tex. Fam. Code § 263.307(a).

Courts may consider the following nonexclusive factors in reviewing the sufficiency of the evidence to support the best interest finding, including: the desires of the child; the present and future physical and emotional needs of the child; the present and future emotional and physical danger to the child; the parental abilities of the persons seeking custody; the programs available to assist those persons seeking custody in promoting the best interest of the child; the plans for the child by the individuals or agency seeking custody; the stability of the home or proposed placement; acts or omissions of the parent which may indicate the existing parent-child relationship is not appropriate; and any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). This list is not exhaustive, and evidence is not required on all of the factors to support a finding terminating a parent's rights. *Id.; In re D.R.A.*, 374 S.W.3d at 533.

In addition, the Family Code sets out factors to consider in evaluating the parent's willingness and ability to provide the child with a safe environment, including: the child's age and physical and mental vulnerabilities; the magnitude, frequency, and circumstances of the harm to the child; whether there is a history of abusive or assaultive conduct by the child's family; whether there is a history of substance abuse by the child's family; the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; the willingness and ability of the child's family to effect positive environmental and personal changes within

a reasonable period of time; and whether the child's family demonstrates adequate parenting skills, including providing the child with minimally adequate health and nutritional care, a safe physical home environment, an understanding of the child's needs and capabilities; and the adequacy of the available support system. Tex. Fam. Code § 263.307(b); *In re R.R.,* 209 S.W.3d at 116.

We review the entire record to determine the child's best interest. *In re E.C.R.*, 402 S.W.3d at 250. The same evidence of acts or omissions under section 161.001(1) may be probative of the best interest of the child. *In re C.H.*, 89 S.W.3d at 28.

### *Endangering Conduct, Including Drug Use, Criminal History, and Domestic Abuse*

By failing to challenge the predicate finding on endangerment, the Father has acknowledged that he endangered the Children. *See* Tex. Fam. Code § 161.001(1)(E). Evidence supporting an unchallenged endangerment finding can be probative of the best interest finding. *See In re K.C.*, 219 S.W.3d 924, 928 (Tex. App.—Dallas 2007, no pet.). A parent's past conduct is probative of his future conduct when evaluating the child's best interest. *See In re O.N.H.*, 401 S.W.3d 681, 684 (Tex. App.—San Antonio 2013, no pet.). Endangering conduct may include the parent's actions, including evidence of drug use, before the Children's births. *See In re J.O.A.*, 283 S.W.3d at 345.

### *Drug Use*

Our record contains evidence supporting the endangerment finding. First, the record contains ample evidence that the Father had not fully overcome a serious drug problem during the pendency of the case. The Father's three drug test results from November 2012 to November 2013 were admitted in evidence. The Father admitted he had a drug problem when the Children were removed from the home.

At that time, the Father's drug test was positive for methamphetamines. At trial, Bruce Jefferies of the National Screening Center testified that the level of methamphetamines from the Father's first test in 2012 indicated "somebody that definitely was doing meth quite often," and "at this reading, this is somebody that would be doing it every day."

In addition to the positive test at the beginning of the case, the Father was ordered to submit to another drug test at the status hearing in January of 2013, but he left before being tested. A letter from National Screening Center dated January 10, 2013, two days after the status hearing, was admitted at trial. The letter states that the Father was ordered to take a drug screen, "but walked out before we could collect a sample . . . . This is considered a REFUSAL/POSITIVE TEST."

Jefferies testified that on April 9, 2013, the Father tested positive for Vicodin at levels consistent with his taking a prescribed amount of the drug, but negative for illegal substances. The Father tested positive for alcohol, however, at levels indicating he drank "a significant amount of alcohol." On the first day of trial, November 19, 2013, the Father's drug test was positive for methamphetamines. Jefferies testified the methamphetamines in the Father's system were at lower levels from the 2012 test. Jefferies testified that the 2013 positive test could not be a result of the earlier positive test the year before. Jefferies confirmed that the results showed that the Father had used methamphetamines again. In comparing the two results, Jefferies stated, "Well, it was horrible when I first saw it. And now it's come down to maybe a two-time use versus everyday use." According to the Father, he had completed a court-ordered substance abuse program before trial. The Father then admitted he continued to abuse methamphetamine after completing the substance abuse program.

The Father also acknowledged he used crack cocaine once or twice a month

for a year while the family lived in Florida. He admitted at trial that the family violence he committed since the birth of his children occurred "during a period, where, admittedly, [he] had a drug problem." The Father also acknowledged that the Children were in the Department's care because of his drug use. A parent's drug use supports a finding that termination is in the best interest of the child. *See In re M.R.*, 243 S.W.3d 807, 821 (Tex. App.—Fort Worth 2007, no pet.). The factfinder can give "great weight" to the "significant factor" of drug-related conduct. *In re K.C.*, 219 S.W.3d at 927; *see also In re J.N.H.*, No. 02–11–00075–CV, 2011 WL 5607614, at *8 (Tex. App.—Fort Worth Nov.17, 2011, no pet.) (mem. op.) (considering a parent's criminal and drug histories in affirming a trial court's decision that termination was in the best interest of a child); *In re K.W.*, No. 02–07–00458–CV, 2008 WL 2639037, at *4 (Tex. App.—Fort Worth July 3, 2008, no pet.) (mem. op.) (holding that clear and convincing evidence existed that termination of a father's parental rights was in a child's best interest when, among other factors, the father had a pattern of criminal conduct and drug abuse).

We acknowledge the Father's April, 2014 testimony that he had been clean and sober for a year, and he did not drink or smoke. However, we must consider this evidence in the context of the other evidence admitted in this trial. The Father's drug test from November of 2013, at the beginning of trial, was positive for methamphetamine. He also tested positive for a significant amount of alcohol in his system in April of 2013, seven months before trial. A photograph of the Father from a Facebook page was admitted in evidence. The post, dated June 18, 2013, at 4:48 a.m., stated next to the photograph: "[The Father] Drunk as Cooter Brown Sancho." In addition, the Father was incarcerated from approximately October 30, 2013 to mid-March, 2014. As the factfinder, the trial court was entitled to disbelieve the Father's testimony that he had been "clean" for almost a year and he did not drink or smoke. *See In re H.R.M.*, 209 S.W.3d 105, 108–09 (Tex. 2006)

(stating the fact finder is the sole arbiter when assessing the credibility and demeanor of witnesses).

*Criminal History*

The Father's criminal records were admitted at trial. These records show a series of crimes both before and after the Children's births. In November of 2000, the Father pled guilty to committing the crime of delivering cocaine, and was sentenced to two years in prison on April 30, 2002, after failing to comply with the requirements of community supervision. In addition, the Department's records reflect that the Father acknowledged he had been arrested and imprisoned for the offense of family violence in Florida on April 17, 2006. At trial, the Father acknowledged the Mother was pregnant with Michelle at the time of the assault. The Father also admitted at trial that he was charged with battery in 2004 and driving while intoxicated in 2009.

In March of 2013, during the pendency of these proceedings, the Father assaulted the Mother by dragging her from his truck, causing a concussion and cuts and bruises. An order signed March 18, 2013, for the Mother's emergency protection was admitted at trial. The Father pled guilty on August 29, 2014, and was sentenced to four days in county jail, with credit for two days served. At first, the Father denied that he had been arrested during these proceedings before his incarceration at the beginning of trial, but he later recalled that he spent a night in jail after a fight with the Mother.[2]

In an unrelated episode during the pendency of these proceedings, the Father admitted he was arrested for aggravated assault following a fight during which he

_____

[2] Based on this and other outlined inconsistencies in the Father's testimony, the factfinder was entitled to discredit the Father's self-serving statements about his complete reform. *See In re H.R.M.*, 209 S.W.3d at 109. We may not disturb the fact finder's credibility determinations. *See In re L.M.I.*, 119 S.W.3d at 712.

stabbed a man in the chest or shoulder shortly before trial began. The Father had been released from jail on a PR bond by the end of the trial of this matter, but the criminal case remained pending.

This evidence of continued criminal conduct, including several periods of incarceration, supports the trial court's best-interest determination. *See In re D.M.*, 58 S.W.3d 801, 814 (Tex. App.—Fort Worth 2001, no pet.) (evidence of parent's "inability to maintain a lifestyle free from arrests and incarcerations" is relevant to best interest determination); *In re M.D.S.*, 1 S.W.3d 190, 199–200 (Tex. App.— Amarillo 1999, no pet.) (incarceration standing alone does not amount to endangering conduct, but it is relevant to the child's need for current and future stability and permanence).

*Domestic violence*

In addition to the Father's criminal behavior, evidence of the Father's domestic violence supports a finding of endangerment to the physical or emotional well-being of the Child. *See* Tex. Fam. Code § 263.307(b)(7). A parent's abusive or endangering conduct may be considered in a best interest analysis even when it occurred before the child's birth. *In re G.M.G.*, ___ S.W.3d ____, 2014 WL 2826363, at *11 (Tex. App.—Houston [14th Dist.] Jun. 19, 2014, no pet.). The trial court reasonably could have considered that the Father's repeated acts of violence would continue in the future. *See Walker v. Tex. Dep't Family & Protective Servs.,* 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *In re D.J.H.*, 381 S.W.3d 606, 613 (Tex. App.—San Antonio 2012, no pet.) (recognizing that a fact finder may infer from past endangering conduct that similar conduct will recur if the child is returned to the parent).

There was evidence that the Children witnessed the fights between the parents. The Father acknowledged that his confrontations with the Mother "in front

of the Children" was "a form of abuse." Abusive or violent conduct can produce a home environment that endangers a child's well-being. *In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.). In addition to Michelle's emotional problems, the caseworker testified Lisa had been troubled by nightmares about the domestic violence that she witnessed between her parents.

This evidence of the Father's drug use and criminal history, including domestic abuse, supports the court's best interest finding that the Father poses a physical and emotional danger to the Children.

### *Stability and Compliance with Services*

The failure to comply with a service plan can support the trial court's best-interest finding. *In re E.C.R.*, 402 S.W.3d at 249. The Father had completed many of his court-ordered services, including individual counseling, parenting classes, and domestic violence counseling. The Father testified he went "above and beyond" the required counseling and undertook additional counseling. The Father's partial, or even substantial, compliance with service requirements set out in a court order is not enough to avoid a termination finding. *See In re M.C.G.*, 329 S.W.3d 674, 675–76 (Tex. App.—Houston [14th Dist.] 2010, pet. denied); *In re T.T.*, 228 S.W.3d 312, 319 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). Moreover, the Father did not challenge the predicate finding that he failed to comply with the court order to participate in services, and we are bound by the unchallenged finding. *See* Tex. Fam. Code § 161.001(1)(O).

Evidence of a parent's unstable lifestyle can support a fact finder's conclusion that termination is in the child's best interest. *In re S.B.*, 207 S.W.3d 877, 887 (Tex. App.—Fort Worth 2006, no pet.). Lack of stability, including a stable home, supports a finding that the parent is unable to provide for a child's emotional and physical needs. *See In re G.M.G.*, ___ S.W.3d at ___, 2014 WL

13

2826363 at *12; *see also Doyle v. Tex. Dep't of Protective & Regulatory Servs.*, 16 S.W.3d 390, 398 (Tex. App.—El Paso 2000, pet. denied) (holding that a parent's failure to provide a stable home and provide for a child's needs contributes to a finding that termination is in the child's best interest).

The Department's caseworker testified that the Father did not establish stable employment or housing, as required by the court. The Father told the caseworker he was living at a lodge near New Braunfels, where he was employed. A letter from a representative of Gruene Outpost River Lodge was admitted in evidence. The letter, dated July 21, 2013, stated the Father worked six hours per week there and received "a room in trade." When the caseworker visited, no one knew the Father. The guardian ad litem also described her attempted visit to the Father's residence. She testified the Father told her she could not visit on a weekend because he could not afford to pay the rent required on the weekends. Near the conclusion of the trial, the Father testified he had obtained appropriate housing, but he had not notified the Department of the change in address until shortly before his testimony. There had been no opportunity for the Department to evaluate his residence. The factfinder may determine that a parent's changes shortly before trial are too late to have an impact on the best interest determination. *See In re Z.C.*, 280 S.W.3d 470, 476 (Tex. App.—Fort Worth 2009, pet. denied) (explaining that a father's "efforts to improve his ability to effectively parent on the eve of trial [were] not enough to overcome a decade of poor parenting and neglect" in evaluating the best interest of the children).

The Father's employment history was also not stable. When, in 2013, the caseworker contacted the Father's employer, she was told the Father no longer worked there. In 2014, the Father testified he was employed as a carpenter making $22 per hour, which he felt was adequate to support the Children. He provided a

reference letter sworn to on April 21, 2014, from the owner of Commercial Custom Services in San Antonio. The letter stated that at that time, the Father was employed by his company working on restoration projects with the San Antonio Housing Authority. The letter stated the Father is "an excellent carpenter and has proven to be an asset to our team." The Father had been required to submit to drug testing to obtain the job and was subject to random drug testing at any time. The letter further stated that the Father was motivated "to be the best he can be" so he can regain custody of his girls. In the owner's opinion, the Father's interaction with the owner's daughter showed he could be a "great" father. The trial court was not required to consider this evidence in a vacuum; the Father's employment as a carpenter on restoration projects was for no more than 30 days, as he was incarcerated prior to that time, and the letter was dated the day before the final day of trial, April 22, 2014.

In considering the best interest of the child, "evidence of a recent turn-around in behavior by the parent does not totally offset evidence of a pattern of instability and harmful behavior in the past." *Smith v. Texas Dep't of Protective & Regulatory Servs.*, 160 S.W.3d 673, 681 (Tex. App.—Austin 2005, no pet.). The factfinder could reasonably have concluded the Father's lack of stability supported the finding that termination is in the Children's best interest. *See L.Z. v. Texas Dep't of Family & Protective Servs.*, No. 03–12–00113–CV, 2012 WL 3629435, at *10–11 (Tex. App.—Austin Aug. 23, 2012, no pet.) (mem. op.) (holding the best interest finding was supported where the father had a history of instability, domestic violence, and criminal activity, and Department planned to have child's foster family adopt him).

### Children's Desires, Needs, and Proposed Placement

A child's love for her natural parent is an important consideration in the best

interest determination. *In re W.S.M.*, 107 S.W.3d 772, 773 (Tex. App.—Texarkana 2003, no pet.). Even where a child is attached to a parent, however, the child's desire to be returned to the parent will not be dispositive of the best interest analysis if the parent has engaged in conduct dangerous to the child's well-being. *B.B. v. Tex. Dep't of Family & Protective Servs.*, ___ S.W.3d ___, 2014 WL 4737541 (Tex. App.—El Paso Sept. 23, 2014, no. pet. h.). In this case, both Children told the caseworker they wanted to remain with their foster family. The Father acknowledged the girls also told him they wanted to stay in their foster home.

A child's need for permanence through the establishment of a "stable, permanent home" has sometimes been recognized the paramount consideration in a best interest determination. *See In re K.C.*, 219 S.W.3d at 931. Therefore, evidence about placement plans, including a potential adoption, are relevant to the best interest determination. *See C.H.*, 89 S.W.3d at 28.

The Children's guardian ad litem provided testimony supporting the finding that termination is in the Children's best interest based on over 150 hours she spent working on the case, including interviewing the Children, family members, and foster parents. *See* Tex. Fam. Code § 107.002(e) (setting out the guardian ad litem's duty to testify regarding her recommendations relating to the best interests of the child and the reasons for the recommendations). In her opinion, termination is in the Children's best interest. She stated that the Children were currently in a safe and stable environment where they were thriving and doing very well. They were also doing well in school. She said the children were bonded to the foster family, and expressed their desire to stay there. The foster parents want to adopt the girls. The foster parents are employed, have their own home, and the girls each have their own room. A photograph of the foster parents with the Children in

which they appeared happy and affectionate was admitted at trial.

The caseworker described the Children's progress since they had been in foster care. When Michelle first came into care, her mental state was unstable and she had to be hospitalized. She was diagnosed with "intermittent explosive disorder." She experienced rages and engaged in violent behaviors at times, some of which caused her to harm herself. She received treatment and therapy during the pendency of these proceedings. There was evidence the foster family worked hard to see that Michelle received appropriate treatment. Michelle learned to control her problems with anger and behave at school. At the time of trial, both girls were doing well.

The Department also presented evidence that the foster parents plan to adopt the Children. A Child Advocates representative testified the foster parents had gone to "extraordinary" lengths helping Michelle with her therapy and medication. They had taken Michelle to several different psychiatrists to help her overcome her anger issues. Both girls told the caseworker, the guardian ad litem, and their Father that they wanted to remain with their foster family.

The factfinder could reasonably have concluded that this evidence supports its best interest determination.

### *The Father's Parenting, Support System, and Plans for the Children*

The Father testified that the Children and he had bonded. He visited them regularly until he was incarcerated, even when he had to drive from the San Antonio area. He brought lunch and clothes or toys for the girls when he visited. He testified they all cried when he left his visits with the Children. He had cared for them before their removal. He testified he made approximately $4,000 per month, enough to buy a house and care for his Children. The Father testified he had investigated places for Michelle to continue her therapy if she was returned to

him.

Over the course of the trial, the Father testified his parents live near him and would help him care for the Children. He testified his mother could care for the Children at her six-bedroom ranch house while he was incarcerated. The guardian ad litem testified, however, that when she contacted the grandmother in June or July, 2013, to consider a possible placement of the Children, the grandmother stated she was no longer interested. During the final day of trial in April, 2014, the Father testified that his parents were both willing to help with family support and specifically babysitting or a $100 loan if needed. The Grandmother was available to confirm this April, 2014 testimony but the Court accepted Father's testimony outlined above.

The Father provided a letter from a neighbor dated April 23, 2013. The letter stated, "From my observation, [the Father] is a loving and protective father. For quite some time, he has not been able to work full time so that he could be active in the child care — taking and picking up his girls from school. The girls are very fond of their dad and their relationship is a stellar one. It is my opinion that the girls should be placed with their father."

Evidence about previous CPS investigations is relevant to the Father's parenting abilities. *See In re J.H.*, 2-09-367-CV, 2010 WL 3618712, at *8 (Tex. App.—Fort Worth Sept. 16, 2010, no pet.) (mem. op.). Records from Florida were admitted in evidence, and they showed that the family had a history with Children's Protective Services (CPS). The Father also acknowledged the family's CPS history at trial. The records showed that the Children were temporarily placed in foster care in Florida. The Children's guardian ad litem testified at trial that the Mother admitted the family fled from Florida to avoid the CPS case there. During a court-ordered evaluation of Michelle after she was removed from her parents in

18

these proceedings, Michelle revealed she had been sexually assaulted when the family lived in Florida. The record reflects the Mother was aware of the assault but the parents never sought help for Michelle.

Other records before the trial court show that the Mother frequently attacked the Father while the children were in close proximity, once with a fireplace poker. As discussed more fully above, Michelle was treated for emotional and behavior problems during the pendency of these proceedings. The Father testified that he considered taking the children away but decided not to do so.

The factfinder could reasonably have concluded that the limited evidence in the Father's favor is not significant or is of such a short duration or recent occurrence that it does not outweigh the other evidence of a longstanding pattern supporting its best interest finding.

## V. CONCLUSION

In sum, the record contains sufficient evidence to support the best interest finding based on the Father's pattern of drug use and criminal behavior, even while these proceedings were pending, despite the rehabilitative services the Department provided to him. Viewing all the evidence in the light most favorable to the judgment, we conclude that a fact finder could have formed a firm belief or conviction that termination of the Father's parental rights is in the Children's best interest. *See J.F.C.*, 96 S.W.3d at 265–66. In light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the best-interest finding is not so significant that a fact finder could not reasonably have formed a firm belief or conviction that termination of the Father's parental rights is in the Children's best interest. *See In re H.R.M.*, 209 S.W.3d at 108. After considering the relevant factors under the appropriate standards of review, we hold the evidence is legally and factually sufficient to support the trial court's finding

that termination of the parent-child relationship is in the Children's best interest. Therefore, we overrule the Father's sole issue.

Having overruled the Father's issue, we order the trial court's judgment affirmed.

/s/    Sharon McCally
        Justice

Panel consists of Justices McCally, Brown, and Wise.