# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-23-00054-CV

### A. B., Appellant

### v.

### Texas Department of Family and Protective Services, Appellee

### FROM THE 433RD DISTRICT COURT OF COMAL COUNTY
### NO. C2022-0467D, THE HONORABLE MELISSA MCCLENAHAN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A.B. (Mother) appeals the final judgment, rendered after a bench trial, terminating her parental rights to T.A.B. (Child).[1] In a sole appellate issue, she challenges the legal and factual sufficiency of the evidence to support the finding that terminating her rights was in Child's best interest. *See* Tex. Fam. Code § 161.001(b)(2). We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Child was five years old at the time of trial in November and December 2022 and by then had been living continuously with Mother's parents (Grandparents) for about eight months. Grandparents' home also included Child's older sister (Older Sister), whom Grandparents adopted

---

[1] The same judgment terminated Child's father's parental rights, but the father has not appealed.

about eight years before trial after Mother relinquished her parental rights to Older Sister. Child was 11 years old at the time of trial and saw Grandparents as her mother and father.

Mother has a long history of drug abuse and has been in and out of rehabilitation programs several times. This suit began soon after Mother was arrested in March 2022 for possession of narcotics when she was stopped while driving with Child in the car with her. In the past, the Department had temporarily removed Child from Mother, including after Mother tested positive for methamphetamine while pregnant with Child. After this arrest for possession, the Department petitioned for termination of Mother's parental rights to Child. The witnesses at the bench trial were law-enforcement officers, Older Sister, Mother's mother (Grandmother), and a Department caseworker. The court admitted drug-test exhibits offered by the Department. Child's guardian *ad litem* and attorney *ad litem* both aligned with the Department in recommending termination of Mother's parental rights.

After trial, the court found by clear and convincing evidence that terminating Mother's parental rights was in Child's best interest and that Mother had committed the two endangerment statutory predicates for terminating parental rights, reciting in its order that Mother had "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child" and had "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." *See* Tex. Fam. Code § 161.001(b)(1)(D), (E), (2). Mother now appeals, challenging only the best-interest finding.

## APPLICABLE LAW AND STANDARD OF REVIEW

To terminate parental rights, the Department must prove at least one of the statutory predicate grounds and, in addition, that termination is in the best interest of the child. *See* Tex. Fam. Code § 161.001(b)(1), (2); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). The Department must prove both elements by clear and convincing evidence. *See* Tex. Fam. Code §§ 161.001(b), .206(a); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code § 101.007; *accord In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002).

Legal-sufficiency review of the evidence regarding termination requires reviewing all the evidence in the light most favorable to the finding under attack and considering undisputed contrary evidence to decide whether a reasonable factfinder could have formed a firm belief or conviction that the finding was true. *See In re A.C.*, 560 S.W.3d 624, 630–31 (Tex. 2018). "Factual sufficiency, in comparison, requires weighing disputed evidence contrary to the finding against all the evidence favoring the finding." *Id.* at 631. "Evidence is factually insufficient if, in light of the entire record, the disputed evidence a reasonable factfinder could not have credited in favor of a finding is so significant that the factfinder could not have formed a firm belief or conviction that the finding was true." *Id.* When reviewing the evidence, we must "provide due deference to the decisions of the factfinder, who, having full opportunity to observe witness testimony first-hand, is the sole arbiter when assessing the credibility and demeanor of witnesses." *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014). We may not "effectively second-guess the trial court's resolution of a factual dispute by relying on evidence that is either disputed, or that the court could easily have rejected as not credible." *See In re L.M.I.*, 119 S.W.3d 707, 712 (Tex. 2003).

While parental rights are of constitutional magnitude, they are not absolute. *In re C.H.*, 89 S.W.3d at 26; *L.M. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-21-00635-CV, 2022 WL 1694474, at *11 (Tex. App.—Austin May 27, 2022, no pet.) (mem. op.). "Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." *In re C.H.*, 89 S.W.3d at 26; *L.M.*, 2022 WL 1694474, at *11. "The strong presumption that a child's best interest is served by keeping the child with his or her biological parents disappears when confronted with evidence to the contrary." *Aguilar v. Foy*, No. 03-10-00678-CV, 2012 WL 677497, at *8 (Tex. App.—Austin Mar. 1, 2012, no pet.) (mem. op.); *accord In re T.D.S.*, No. 13-15-00107-CV, 2015 WL 5110472, at *21 (Tex. App.—Corpus Christi–Edinburg Aug. 28, 2015, no pet.) (mem. op.); *B.B. v. Texas Dep't of Fam. & Protective Servs.*, 445 S.W.3d 832, 838 (Tex. App.—El Paso 2014, no pet.); *In re C.M.C.*, No. 14-12-00186-CV, 2012 WL 3871359, at *5 (Tex. App.—Houston [14th Dist.] Aug. 30, 2012, pet. denied) (mem. op.); *In re A.I.G.*, 135 S.W.3d 687, 692 (Tex. App.—San Antonio 2003, no pet.).

When reviewing best-interest findings, factors that courts consider include (1) the child's wishes, (2) the child's emotional and physical needs now and in the future, (3) emotional or physical danger to the child now and in the future, (4) the parenting abilities of the parties seeking custody, (5) programs available to help those parties, (6) plans for the child by the parties seeking custody, (7) the stability of the proposed placement, (8) the parent's conduct that may indicate that the existing parent-child relationship is improper, and (9) any excuses for the parent's conduct. *In re J.W.*, 645 S.W.3d 726, 746 (Tex. 2022). This list of factors is not exhaustive, not all of them need to be proven to determine a child's best interest, and analysis of

a single factor may be adequate in a particular factual context. *See M.L. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-22-00541-CV, 2023 WL 2025710, at *5 (Tex. App.—Austin Feb. 16, 2023, no pet.) (mem. op.); *S.C. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-20-00039-CV, 2020 WL 3892796, at *16 (Tex. App.—Austin July 10, 2020, no pet.) (mem. op.).

## DISCUSSION

Mother's sole appellate issue attacks the legal and factual sufficiency of the evidence to support the trial court's finding that terminating her parental rights to Child was in Child's best interest. *See* Tex. Fam. Code § 161.001(b)(2).

Under the first of the best-interest factors—Child's wishes—children's love for their parents does not outweigh overwhelming evidence showing that the parent has engaged in conduct, or placed the child in surroundings, that endangered the child. *R.M. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-21-00342-CV, 2021 WL 5456657, at *5 (Tex. App.—Austin Nov. 18, 2021, no pet.) (mem. op.) (citing *In re W.S.M.*, 107 S.W.3d 772, 773 (Tex. App.—Texarkana 2003, no pet.)). "The child's love of his parents cannot compensate for the lack of an opportunity to grow up in a normal and safe way equipped to live a normal, productive, and satisfying life." *In re W.S.M.*, 107 S.W.3d at 773.

While some testimony showed that Child loved Mother, wanted to return to her, and was bonded with her when the current placement with Grandparents began, other testimony showed that Child's bond with Mother dwindled while Child's bond with Grandparents grew into a close attachment. And still other testimony showed that Child was happy, healthy, and thriving in Grandparents' home. *See In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("When children are too young to express their desires, the fact finder may consider

5

that the children have bonded with the foster family, are well cared for by them, and have spent minimal time with a parent."); *accord J.C. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-22-00583-CV, 2023 WL 2169492, at \*5 (Tex. App.—Austin Feb. 23, 2023, no pet.) (mem. op.). The evidence under this first factor is thus mixed but, even at best for Mother, is outweighed by the evidence of endangerment, *see R.M.*, 2021 WL 5456657, at \*5; *W.S.M.*, 107 S.W.3d at 773, to which we turn next.

We next address the second, third, fourth, seventh, and eighth best-interest factors. The factfinder may infer from a parent's past endangering conduct that much the same would happen again if the child were returned. *See D.T. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-18-00770-CV, 2019 WL 1526429, at \*6 (Tex. App.—Austin Apr. 9, 2019, no pet.) (mem. op.); *In re J.D.*, 436 S.W.3d at 119. And the unchallenged findings here under the endangerment predicates are binding in this appeal and thus can support the best-interest finding. *M.V. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-19-00066-CV, 2019 WL 2518733, at \*2 (Tex. App.—Austin June 19, 2019, pet. denied) (mem. op.); *In re E.A.F.*, 424 S.W.3d 742, 750 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). Child herself tested positive for methamphetamine when she was about four-and-a-half years old, indicating she had been exposed to drugs while in Mother's care. [2] When her placement with Grandparents began in 2022, Child rarely wanted to eat and was so small that Grandmother was concerned and gave her Pediasure for extra nutrition. Child lacked an established routine and so had trouble with bedtime.

This evidence of Child's experiences when she was in Mother's care, paired with extensive evidence of Mother's long-term drug abuse, supports termination. *See J.G. v. Texas*

---

[2] Father was then incarcerated.

*Dep't of Fam. & Protective Servs.*, No. 03-22-00790-CV, 2023 WL 3634364, at *8 (Tex. App.—Austin May 25, 2023, no pet. h.) (mem. op.) (explaining that evidence of continued illegal drug use by parent, "knowing her parental rights were in jeopardy, supports the conclusion that she is not willing or able to provide the child with a safe environment—a primary consideration in determining best interest"); *S.S. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-21-00695-CV, 2022 WL 2542007, at *8 (Tex. App.—Austin July 8, 2022, pet. denied) (mem. op.) (holding that history of drug abuse is relevant in best-interest determination (citing *In re C.A.J.*, 122 S.W.3d 888, 893 (Tex. App.—Fort Worth 2003, no pet.))). She began abusing marijuana and ecstasy as a teenager. She overdosed twice while a teenager and from then into adulthood went through at least five behavioral or drug-rehabilitation programs, plus years of counseling from sixth grade onward. When Older Sister was one or two years old, Mother was abusing drugs again, resulting in the Department's becoming involved, and she voluntarily relinquished her parental rights to Older Sister. Then when Mother was pregnant with Child, Grandmother learned from Mother's doctor that Mother tested positive for methamphetamine during the pregnancy, so the doctor asked Grandmother to attend future medical appointments with Mother. Soon after Child was born, Mother and Child lived with Grandparents, and Grandmother warned Mother that she would report Mother to the Department if she caught her using drugs again. That is what happened—Grandmother reported Mother after finding ten or more packages of methamphetamine in the home and noticing contemporaneous changes in Mother's behavior, including more anger, more secrecy, and coming and going at odd hours. In fact, Grandmother testified that Mother often would take Child out of the home late at night, when Child should have been sleeping. On another occasion, Father appeared in front of Grandparents' home at 2:00 a.m., Grandparents' son called police, and Father was found to have "a lot of drugs on him." This provided an example of Grandmother's

testimony that the people Mother tends to spend time with abuse drugs, including those who would be asked to babysit Child if she were returned to Mother's care. As for Mother's March 2022 arrest for possession of narcotics, Comal County law enforcement conducted a traffic stop of Mother's car while Child was a passenger. A search turned up a glass pipe in a backpack, syringes, and a liquid substance in a sunglasses case. After the substance was field-tested, Mother was arrested.

In response to her history of drug abuse, Mother was given a 'family service plan" by the Department that required her to submit to frequent, random drug-testing. When the Department's caseworker first met with Mother during the suit, the caseworker told her that missed drug tests would be presumed to be positive drug tests. *See D.T.*, 2019 WL 1526429, at *4 (stating that missed drug tests can be presumed to be positive). The caseworker also told Mother not to dye her hair, suggesting that doing so could interfere with hair-follicle drug-testing. Yet Mother missed at least six drug tests in the three months just before trial and dyed her hair at least twice while this suit was pending. In addition, Mother on at least five occasions during the suit tested positive for opiates, methamphetamine, or both. Otherwise, on at least three occasions during the suit, including in the weeks before trial, Mother produced negative drug tests.

Beyond the drug-abuse evidence, other evidence set up a contrast between Grandparents' provision for Child's needs in their home and Mother's comparative difficulty in providing for Child's needs. *See Spurck v. Texas Dep't of Fam. & Protective Servs.*, 396 S.W.3d 205, 223 (Tex. App.—Austin 2013, no pet.) (explaining that factfinder may weigh "the relative parenting abilities of the parties seeking custody" when deciding best interest). The record contains evidence that Child was doing very well in the placement with Grandparents, including by bonding with them and with Older Sister, enjoying stability, and gaining confidence. She is

8

growing healthier than when she first came into their care. Grandparents have both children in counseling and play therapy. Child has told Grandparents that she loves them. She enjoys school. She often sings and dances in their home, a home where she has her own room and a yard to play in. Grandparents have her in dance classes.

Mother, by contrast, is living in a "sober-living home" on recommendation from her recent inpatient-treatment provider.[3] *See In re A.A.B.*, Nos. 14-16-00855-CV, 14-16-00918-CV, 2017 WL 1334622, at *9 (Tex. App.—Houston [14th Dist.] Apr. 11, 2017, pet. denied) (mem. op.) (parent's living in Transitional Living Center could be viewed as unstable for child and thus as evidence that termination of parental rights is in child's best interest). Testimony suggested that there were no other children in that home but that there were several adults who, like Mother, needed treatment for drug abuse. To determine what else Mother could provide for Child, the Department caseworker asked Mother to supply proof of employment via pay stubs and proof of child-support payments. Although she has work through a temp agency, Mother has never given the caseworker proof of pay stubs or child-support payments, and she is in fact behind on child support. Mother's plan also required her to attend parenting classes that met a certain curriculum requirement, but Mother took online classes that did not meet the requirement. She was also put on a waiting list before completing plan-required classes on family-violence prevention because she had missed some sessions.

Older Sister's experiences shed light on Mother's parenting ability. In her own words, Older Sister feels safe with Grandparents and does not want Mother to take either her or Child back, even though she cries when Mother leaves. Older Sister worries that Mother might

_____

[3] Mother has lived in such a facility before, but after leaving began abusing drugs again.

not take good care of Child. While Older Sister lived with Mother, Mother would sneak out of the home, which hurt the child's feelings. Mother "never took care of" her. Older Sister even knew that Mother took drugs out of sight, which upset the child. After being adopted by Grandparents, Older Sister has not seen Mother very much, and when she does, she feels "[h]appy, mad." She is happy that Child now lives with them. Older Sister does not like Mother anymore.

Grandmother testified about Mother's effects on Older Sister as well. Grandparents have let Mother call Older Sister on the phone for years, but the calls have caused harm because Mother breaks many of her promises to call again or to visit. Grandmother sees the promise-breaking as emotionally abusive. Mother's contact with Older Sister is only sporadic, leaving the child with "a lot of anger issues" and "a lot of resentment."

Other testimony favored Mother's position under these best-interest factors. Grandmother admitted that Mother managed to teach Child good behavior, but that was all that Grandmother thought Mother had done well in parenting. Mother recently completed drug rehabilitation, and Older Sister recently called Mother to thank her for a birthday gift. Mother completed parts of her plan, including the "Outreach, Screening, Assessment and Referral" evaluation, but the caseworker testified that Mother has not yet carried out all the evaluation's recommendations. Mother believes she can achieve sobriety and has passed several drug tests, including some not long before trial. All that said, the state of the evidence—including the extensive history of drug abuse, its continuing during this suit while Mother's rights were at stake, the unchallenged endangerment-predicate findings, and the deficiencies in Mother's ability to parent Older Sister and Child—makes these best-interest factors point overwhelmingly in favor of terminating Mother's parental rights.

10

Under the fifth, sixth, and ninth best-interest factors, Grandmother testified that she and her husband want to adopt Child, keeping her and her sibling in the same home together and Child out of the foster-care system. *See In re B.H.R.*, 535 S.W.3d 114, 124 (Tex. App.—Texarkana 2017, no pet.) ("A fact-finder may consider the consequences of its failure to terminate parental rights and that the best interest of the child may be served by termination so that adoption may occur rather than the impermanent foster care arrangement that would result if termination were to not occur."); *accord D.O. v. Texas Dep't of Hum. Servs.*, 851 S.W.2d 351, 358 (Tex. App.—Austin 1993, no writ), *disapproved of on other grounds*, *J.F.C.*, 96 S.W.3d at 267 n.39. Grandmother thinks that returning Child to Mother would be "devastating" and that Child would not be safe with her. Mother did not testify, and the record lacks any showing of Mother's plans for Child, except that she will keep working on sobriety and live in the sober-living home. *See In re K.C.*, No. 07-18-00282-CV, 2018 WL 6729944, at \*5 (Tex. App.—Amarillo Dec. 21, 2018, pet. denied) (mem. op.) (because parent "chose not to provide the court any information through testimony," court of appeals was "not informed of matters critical to the best-interest determination such as [parent]'s rehabilitation or his plans for family and employment"). Other testimony helped explain some of Mother's personal difficulties—Grandmother testified that Mother was sexually assaulted as a 15-year-old. But at best for Mother, the evidence under these final factors either is mixed or weighs slightly in favor of termination.

Because of the overwhelming evidence of endangerment, including from the history of drug abuse and parenting deficiencies, and evidence of Child's significant progress under Grandparents' care, the evidence when viewed through the best-interest factors was legally and factually sufficient to support the trial court's best-interest finding. We overrule Mother's sole appellate issue.

11

**CONCLUSION**

Having overruled Mother's appellate issue, we affirm the trial court's judgment.

_____

J. Woodfin Jones, Justice

Before Justices Baker, Smith, and Jones[*]

Affirmed

Filed: July 11, 2023

[*]Before J. Woodfin Jones, Chief Justice (Retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code § 74.003(b).