# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-22-00704-CV

### K. L., E. L., and Texas Department of Family and Protective Services, Appellants

### v.

### C.P. and S.L., Appellees

---

### FROM THE 353RD DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-FM-13-004111, THE HONORABLE CLEVE WESTON DOTY, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

The Department of Family and Protective Services moved to modify a final decree of conservatorship concerning two children, K.L. and E.L., to seek termination of the children's parents' parental rights. Although the trial court found after a bench trial that the Department had proved several predicate grounds for termination of both parents' rights, the court found that the Department had failed to prove by clear and convincing evidence that terminating their rights was in the children's best interest. *See* Tex. Fam. Code § 161.001(b)(2).

### STATEMENT ON JURISDICTION AND THE PARTIES

The appellate attorney ad litem for the children filed a notice of appeal and appellants' brief on their behalf. The referenced "notice of appeal," which is the source of the children's invocation of our appellate jurisdiction, is a motion filed in our Court for an extension of time to file an appellant's brief. We construe that motion as both a notice of appeal and an

accompanying motion for an extension of time to file a notice of appeal in order to exercise jurisdiction here. The modification order being appealed is the same modification order being appealed in our separate Case No. 03-22-00705-CV, which involves child N.N., who is the daughter of Mother and another man. The appellate attorney ad litem for the children is also the appellate attorney ad litem for N.N. The only notice of appeal that the appellate attorney ad litem filed names only N.N. (and the attorney) and does not name K.L. or E.L. as appealing parties. But any party who seeks to alter a judgment must file a notice of appeal in their own name and ordinarily may not rely on another party's notice of appeal. *See* Tex. R. App. P. 25.1(c), (d)(5); *Berger v. Flores*, No. 03-12-00415-CV, 2015 WL 3654555, at *4 (Tex. App.—Austin June 12, 2015, no pet.) (mem. op.); *In re Estate of Curtis*, 465 S.W.3d 357, 366 (Tex. App.—Texarkana 2015, pet. dism'd); *Matbon, Inc. v. Gries*, 287 S.W.3d 739, 740 (Tex. App.—Eastland 2009, no pet.); *Dick v. Bateman*, No. 03-05-00783-CV, 2006 WL 2589270, at *1 n.2 (Tex. App.—Austin Sept. 8, 2006, no pet.) (mem. op.). Because another party to the same order—N.N.—timely filed a notice of appeal on November 7, 2022, K.L. and E.L. had until November 21, 2022, to file their notice of appeal. *See* Tex. R. App. P. 26.1(d). They did not meet that deadline, but within 15 days after that deadline, *see* Tex. R. App. P. 26.3; *Verburgt v. Dorner*, 959 S.W.2d 615, 615–17 (Tex. 1997), the appellate attorney ad litem filed in our Court a motion for an extension of time to file an appellant's brief. We construe that motion as K.L. and E.L.'s notice of appeal and motion for an extension of time to file their notice of appeal, and we grant the necessary extension and thus may exercise jurisdiction here. *See Paxton v. Simmons*, 640 S.W.3d 588, 598 (Tex. App.—Dallas 2022, no pet.) (similar use of implied motion for extension of time to file notice of appeal in accelerated appeal).

Separately, we assume for all purposes that K.L. and E.L., though they are children, may maintain this appeal in their own capacity without need of a guardian or next friend to maintain the appeal on their behalf. *Cf. J.M. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-22-00435-CV, 2023 WL 213928, at *3 (Tex. App.—Austin Jan. 17, 2023, pet. denied) (mem. op.) ("Minors are considered to be under a legal disability and are therefore 'unable to sue or be sued in their individual capacities; they are required to appear in court through a legal guardian, a "next friend," or a guardian ad litem.'" (quoting *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005))). Their appellants' brief specifies that their guardian ad litem is "not a party to the appeal." Nevertheless, no party challenges in this Court the children's capacity to maintain this appeal, so we need not address the issue. *See Coastal Liquids Transp., L.P. v. Harris Cnty. Appraisal Dist.*, 46 S.W.3d 880, 884 (Tex. 2001) (holding that defects in capacity can be waived).

The brief's two appellate issues are that (1) the evidence was legally and factually insufficient to support the trial court's finding against the Department on "best interest" for terminating parental rights, and (2) the court abused its discretion by appointing the parents as possessory conservators. Because we hold that the evidence was factually insufficient (but otherwise legally sufficient) to support the trial court's best-interest finding, and because the appellants argue that we need not reach their second appellate issue if we sustain their first, we reverse and remand for a new trial without addressing the second issue.

**FACTUAL AND PROCEDURAL BACKGROUND**

At the time of trial in 2022, K.L. was ten years old, and E.L. was nearly nine. They had been the subject of prior proceedings involving the Department, which ended with a 2015

agreed final decree of conservatorship. In December 2019, the Department filed its motion to modify the decree, seeking to terminate the parental rights of C.P. (Mother) and S.L. (Father).

The Department filed this motion based on two referrals for neglectful supervision. The first referral involved domestic violence committed against Mother by her current husband (Husband), who is not K.L. and E.L.'s father. Husband was jailed, and Mother testified that she would soon seek a divorce. The second referral occurred just a day or two after Husband's domestic violence and involved K.L., E.L., and the children's half-sister in a car together. An unrelated person noticed the children alone in the car and called police. Officers arrived to find that Mother had emerged from a nearby house. The officers smelled marijuana in the car and found black-tar heroin in Mother's possession, which Mother said she had grabbed from the house. Mother was jailed for possession of a controlled substance and child endangerment, and the Department filed its motion to modify shortly thereafter.

During this suit, K.L. and E.L. were placed variously with Father's mother, a short-lived foster placement, a return-and-monitor placement with Mother and Husband, Mother's mother, Father's mother again, a second return-and-monitor, and finally a longer-term foster placement. The children stayed in this last foster placement through trial.

Mother and Husband, by their own admission, are drug addicts and struggle to stay sober. Mother relapsed several times during the pendency of this action and went to drug rehabilitation or detoxification facilities on at least five separate occasions. Mother admitted to a long history of drug abuse, including long-term use of methamphetamine and heroin, abusing Xanax, and sporadic use of cocaine. Mother last used illegal drugs the month before trial, using heroin, methamphetamine, and crack cocaine.

4

Less than two weeks before trial, the Department and Father executed an irrevocable mediated settlement agreement addressing the termination of his parental rights. As part of the agreement, the Department agreed to limit the statutory predicate grounds under which it would seek to terminate his rights to Subsection (O). *See* Tex. Fam. Code § 161.001(b)(1)(O). In exchange, Father stipulated to the facts necessary to prove that he had violated Subsection (O). He also stipulated that terminating *both* his rights *and* Mother's rights was in the children's best interest, but he and the Department also stipulated that if Mother's parental rights were not terminated, then it would not be in the children's best interest to terminate his rights.

The suit proceeded to trial jointly on the Department's petition to terminate Mother's and Father's parental rights to K.L. and E.L. and on the Department's request to terminate Mother's parental rights to her other child, N.N., and also the parental rights of N.N.'s father, J.N. Numerous witnesses testified at trial.[1] Afterward, the trial court found by clear and convincing evidence that Father had violated Subsection (O) and that Mother had committed violations of Subsections (D), (E), and (P), respectively: (1) she knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered the physical or emotional well-being of the children, (2) she engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the physical or emotional well-being of the children, and (3) she used a controlled substance in a manner that endangered the health or safety

---

[1] Witnesses included the following: Mother's Outreach Screening Assessment and Referral (OSAR) counselor, a Department investigator, the children's guardian ad litem, Husband's older two children, Father's mother, a licensed psychologist, Mother, an officer who responded to the incident when the children were in the car and Mother had heroin, Father, a Department conservatorship caseworker, the children's therapist, one of the longer term foster parents, three of Mother's friends, Mother's sister, Mother's mother, Husband's domestic violence counselor, Husband's psychological evaluator, one of Husband's friends, and a Department adoption caseworker.

of the children and failed to complete a court-ordered substance-abuse treatment program or continued to abuse a controlled substance after completion of a court-ordered substance-abuse treatment program. *See id.* § 161.001(b)(1)(D), (E), (P). However, the court also found that the Department had failed to prove by clear and convincing evidence that terminating either Mother's or Father's parental rights was in the children's best interest.

Although Mother filed a notice of appeal of her own, she later moved to dismiss her appeal, which we granted as to her. *K.L. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-22-00704-CV, 2023 WL 114877, at *1 (Tex. App.—Austin Jan. 6, 2023, order). The appellate attorney ad litem for K.L. and E.L. filed an appellant's brief for them, and the Department filed a brief adopting the attorney ad litem's positions and arguments as the Department's own. We have also received a brief from Mother supporting the trial court's findings contrary to the Department's position.

## TERMINATION OF PARENTAL RIGHTS

To terminate parental rights, the Department must prove at least one of the statutory predicate grounds and, in addition, that termination is in the best interest of the child. *See* Tex. Fam. Code § 161.001(b)(1), (2); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). The Department must prove both elements by clear and convincing evidence. *See* Tex. Fam. Code § 161.206(a); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code § 101.007; *accord In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002).

6

Legal-sufficiency review of the evidence regarding termination requires reviewing all the evidence in the light most favorable to the finding under attack and considering undisputed contrary evidence to decide whether a reasonable factfinder could have formed a firm belief or conviction that the finding was true. *See In re A.C.*, 560 S.W.3d 624, 630–31 (Tex. 2018). "Factual sufficiency, in comparison, requires weighing disputed evidence contrary to the finding against all the evidence favoring the finding." *Id.* at 631. "Evidence is factually insufficient if, in light of the entire record, the disputed evidence a reasonable factfinder could not have credited in favor of a finding is so significant that the factfinder could not have formed a firm belief or conviction that the finding was true." *Id.* When reviewing the evidence, we must "provide due deference to the decisions of the factfinder, who, having full opportunity to observe witness testimony first-hand, is the sole arbiter when assessing the credibility and demeanor of witnesses." *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014).

While parental rights are of constitutional magnitude, they are not absolute. *C.H.*, 89 S.W.3d at 26; *L.M. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-21-00635-CV, 2022 WL 1694474, at *11 (Tex. App.—Austin May 27, 2022, no pet.) (mem. op.). "Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." *C.H.*, 89 S.W.3d at 26; *L.M.*, 2022 WL 1694474, at *11. "The strong presumption that a child's best interest is served by keeping the child with his or her biological parents disappears when confronted with evidence to the contrary." *Aguilar v. Foy*, No. 03-10-00678-CV, 2012 WL 677497, at *8 (Tex. App.—Austin Mar. 1, 2012, no pet.) (mem. op.); *accord In re T.D.S.*, No. 13-15-00107-CV, 2015 WL 5110472, at *21 (Tex. App.—Corpus Christi-Edinburg Aug. 28, 2015, no pet.) (mem. op.); *B.B. v. Texas Dep't of Fam. & Protective*

*Servs.*, 445 S.W.3d 832, 838 (Tex. App.—El Paso 2014, no pet.); *In re C.M.C.*, No. 14-12-00186-CV, 2012 WL 3871359, at \*5 (Tex. App.—Houston [14th Dist.] Aug. 30, 2012, pet. denied) (mem. op.); *In re A.I.G.*, 135 S.W.3d 687, 692 (Tex. App.—San Antonio 2003, no pet.).

This appeal involves legal- and factual-sufficiency attacks on the evidence supporting findings the court made that were contrary to the position of the party who bore the burden of proof. *See M.P. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-22-00163-CV, 2022 WL 4281617, at \*7 (Tex. App.—Austin Sept. 16, 2022, pet. filed) (mem. op.). Therefore, to succeed on legal sufficiency, the appellants "must demonstrate . . . that the evidence establishes, as a matter of law, all vital facts in support of the issue." *Id.* (quoting *In re Q.M.*, No. 02-19-00367-CV, 2020 WL 827595, at \*2 (Tex. App.—Fort Worth Feb. 20, 2020, no pet.) (mem. op.)). We may sustain such a legal-sufficiency challenge "only if as a matter of law, the evidence conclusively establishes the 'contrary proposition' to the finding" under attack, *id.* (quoting *Q.M.*, 2020 WL 827595, at \*2), which here means that the evidence must have conclusively established that terminating Mother's or Father's parental rights was in the children's best interest, *see* Tex. Fam. Code § 161.001(b)(2); *M.P.*, 2022 WL 4281617, at \*7. For factual sufficiency in this context, "we review the entire record and determine whether the trial court's failure to form a firm conviction or belief that a parent's rights must be terminated is 'contrary to the overwhelming weight of the evidence and clearly wrong.'" *M.P.*, 2022 WL 4281617, at \*7 (quoting *Q.M.*, 2020 WL 827595, at \*2).

When reviewing best-interest findings, factors that courts consider include (1) the child's wishes, (2) the child's emotional and physical needs now and in the future, (3) emotional or physical danger to the child now and in the future, (4) the parenting abilities of the parties seeking custody, (5) programs available to help those parties, (6) plans for the child by the parties

seeking custody, (7) the stability of the proposed placement, (8) the parent's conduct that may indicate that the existing parent–child relationship is improper, and (9) any excuses for the parent's conduct. *Id.* (citing *A.C.*, 560 S.W.3d at 631; *In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012); *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976)). This list of factors is not exhaustive, not all of them need to be proven to determine a child's best interest, and analysis of a single factor may be adequate in a particular factual context. *Id.* (citing C.H., 89 S.W.3d at 27; *Holley*, 544 S.W.2d at 372).

In the first appellate issue, the contention is that the evidence was legally and factually insufficient to support the trial court's failure to find that termination was in K.L.'s and E.L.'s best interest.

### *Best interest concerning Father*

The evidence for and against Father under "best interest" was much less extensive than the evidence concerning Mother, likely because of the Department and Father's mediated settlement agreement. The evidence in Father's favor, which we conclude was more than a scintilla, means that the Department did not conclusively establish that terminating his parental rights was in the children's best interest. *See id.* That evidence included proof of his continued attendance at supervised visitations with the children, testimony by his mother that he treats the children kindly, and testimony by the conservatorship caseworker and by the foster parent that there were no concerns with Father's conduct during the visits. Although scant, the evidence in Father's favor is enough to have prevented the Department from proving conclusively that terminating Father's parental rights was in the children's best interest. Accordingly, we overrule this portion of the first appellate issue.

9

But under factual sufficiency, we conclude that the trial court's finding against the Department on "best interest" for terminating Father's rights was contrary to the overwhelming weight of the evidence and clearly wrong and was therefore factually insufficient. *See M.P.*, 2022 WL 4281617, at *7. The guardian ad litem testified that Father's rights should be terminated, and Father's mother testified in support of the termination agreement that Father and the Department had reached. While Father's mother was the children's placement for several months, she received no help from Father to care for the children. They have since been placed elsewhere, and Father now lives with his mother. He does not live on his own because of mental-health problems that keep him from being able to care for himself and that lead him to have manic episodes. His mother added that he has a substance-abuse problem, and he did not stay consistently sober for the roughly two and a half years that elapsed between the Department's motion to modify and trial. When he and Mother first met years before, they both were abusing drugs, including around the time K.L. was born. Father's other misbehavior led to a discontinuation of joint-therapy sessions among himself, Mother, and Husband and also led to police involvement during the second return-and-monitor. At that time, while the children were placed with Mother and Husband, Father visited their home and made unspecified threats toward Husband. Police had to resolve the situation. Concerning the current foster placement, testimony showed that the foster parents want to adopt the children; that the foster parents are effectively addressing the children's emotional difficulties; and that according to the children's therapist, the children are bonded with the foster parents. Finally, Father agreed that he did not complete the court-ordered services of therapy, attend all visitations, do regular drug-testing, or maintain contact with the Department, and that it is in the children's best interest to terminate his rights. We conclude that the evidence

10

was factually insufficient for the trial court to have found against the Department on "best interest" concerning Father, and we sustain this portion of the first appellate issue.

***Best interest concerning Mother***

The evidence for and against Mother under "best interest" was much more extensive. We review that evidence through the prism of the *Holley* factors. *See Holley*, 544 S.W.2d at 371–72.

The evidence of K.L.'s and E.L.'s wishes—the first factor—points in favor of terminating Mother's parental rights. The conservatorship caseworker testified that K.L. and E.L. want to stay with the foster parents. Other testimony showed that the children are angry with Mother. Some of that anger, according to the testimony, related to statements by one of the children that he does not feel safe with Mother. Feelings like these manifested physically when in one instance a caseworker was taking the children to a visit with Mother and K.L. screamed, cried, kicked, and tried to escape the car because he was being required to attend the visit.

The evidence under the second, third, seventh, eighth, and ninth *Holley* factors, although somewhat rebutted, overwhelmingly points to termination. Within the evidence, Mother's drug abuse was a major topic, and both her conduct in the home and other aspects of her behavior were relevant as well.

First, the drug abuse. *See J.C. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-22-00583-CV, 2023 WL 2169492, at *6 (Tex. App.—Austin Feb. 23, 2023, no pet.) (mem. op.) (holding that evidence was sufficient to support best-interest finding in part because parents used illegal drugs and "continued to test positive for methamphetamine when they knew their parental rights were in jeopardy" despite their having undergone intensive drug therapy, which

11

supported conclusion "that drug treatment programs are ineffective for them"). Mother, by her own admission and according to testimony from her sister and corroboration by the psychologist who evaluated her, has abused drugs for many years and is addicted. Her drugs of frequent choice include heroin and methamphetamine. She has also abused Xanax and used amphetamine and cocaine sporadically. During the Department's first involvement with these children in 2013 and 2014, Mother participated in drug-court proceedings but was held in contempt by the drug court and ultimately unsuccessfully discharged from its proceedings.

Mother's drug abuse also led to this suit—the incident when the children were alone in the car—and continued to crop up throughout it. When it set up the two return-and-monitors, the Department was expressing hopeful agreement with Mother that she was ready to care for the children. But both failed after Mother tested positive for illegal drugs. She even used illegal drugs at least once in the home with the children after the first return-and-monitor had failed. And other testimony showed that Mother has kept drug paraphernalia in the home even though E.L. "goes through everything," including the cabinets. There was conflicting testimony about how long Mother has been able to stay sober over time. Then after the second return-and-monitor failed, Mother started refusing to take drug tests. There was also conflicting evidence about video exhibits admitted—one video depicts Mother outside Department offices just before a scheduled visitation appearing intoxicated. Mother testified that the video actually was showing the combined effects of methadone, which she said she takes to combat her addiction, and lack of sleep. Further, Mother's drug abuse has affected those around her. One of Husband's friends testified that it will be easier for Husband to stay sober once he and Mother separate. Plus, testimony by the psychologist explained how this drug abuse can affect the children—it can lead to developmental problems with self-esteem and self-confidence, difficulty with forming relationships, and a higher

12

chance of developing mental-health problems. The children's therapist is treating them for emotional dysregulation and trauma, and the children have expressed that their home life with Mother was chaotic and unsafe.

Some of the evidence about Mother's drug use was rebutted. Her OSAR counselor recommended merely that she undergo detoxification during one relapse during this suit. And both before and during the suit, Mother has successfully completed several drug-treatment programs. These efforts have helped her to maintain some long periods of sobriety, including, according to her, one four-and-a-half year period that included only one relapse. Facts like these led Husband, who otherwise offered testimony contrary to Mother's position and whom Mother testified she would soon divorce because he is controlling, to testify that Mother can stay sober long-term. The psychologist expressed general agreement, testifying that he believes that in situations like Mother's, that is, successfully undergoing inpatient treatment more than once, an individual has a higher probability of remaining sober long-term. Other testimony suggested that individuals with unsuccessfully treated PTSD and trauma can have a more difficult time staying sober, and testimony by Mother and the psychologist suggested that those factors were present in Mother. Mother reported that she stays current on her psychiatric medications, which are helping her. During the suit, Mother provided numerous negative drug-test results, and the two return-and-monitors stemmed from the Department's belief that Mother was and could stay sober.

Second among the relevant topics under these *Holley* factors was Mother's other conduct in the home. *See D.W. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-21-00455-CV, 2022 WL 91972, at *8 (Tex. App.—Austin Jan. 6, 2022, pet. denied) (mem. op.) (holding that evidence was sufficient to support "best interest" termination finding in part because of parent's "inappropriate behavior" and lack of improvement in "parenting abilities and stability"); *E.N. v.*

13

*Texas Dep't of Fam. & Protective Servs.*, No. 03-21-00014-CV, 2021 WL 2460625, at *8 (Tex. App.—Austin June 17, 2021, no pet.) (mem. op.) ("'A child's need for permanence through the establishment of a stable permanent home' is 'the paramount consideration in a best-interest determination.'" (quoting *In re L.G.R.*, 498 S.W.3d 195, 205 (Tex. App.—Houston [14th Dist.] 2016, pet. denied))); *In re E.M.*, 494 S.W.3d 209, 226 (Tex. App.—Waco 2015, pet. denied) ("The goal of establishing a stable permanent home for a child is a compelling state interest. The need for permanence is a paramount consideration for a child's present and future physical and emotional needs." (internal citation omitted)). The guardian ad litem testified that during the second return-and-monitor, she learned that the children were going without their mental-health medication as often as prescribed, and the children were experiencing drop-offs in their own behavior at the same time. Other omissions about Mother and the children's home life caught the guardian ad litem's attention. The home was horribly messy, with animal feces on children's bedding, cigarette butts on the floor, and a noticeable stench of each. One of Husband's daughters noticed that the home at one point lacked electricity, and she has had to give Mother and Husband money to pay bills. Father's mother has also given them money, and Mother admitted to pawning lots of items, including her engagement ring, so she could buy drugs. During an earlier placement with Father's mother, Mother and Husband had continued to stay in the home, even though the Department had instructed them not to, because they had nowhere else to stay. The Department also took an unusual step with Mother. On top of the usual provisions of the Family Safety Plans that the Department imposes in a case like this, the Department added provisions requiring Mother and Husband to provide adequate food to the children and not to physically punish them, because the children themselves had complained about those issues. Also, as mentioned above, the children believed home life with Mother to be chaotic.

14

By contrast and in Mother's favor, she and others testified that she is an attentive parent. Testimony showed that she has planned birthday parties and other fun activities for the children, with lots of people attending. Mother completed Department-required services, including those designed to address parenting in the home, although she was once dismissed by a therapist for failing to keep appointments. The guardian ad litem observed other times when the children were happy in the home with Mother. And the psychologist offered that Mother lacks traits that are common to child abusers.

Third, there was evidence of misbehavior by Mother outside the home. Mother admitted to a gambling problem during two of the three years before trial. She admitted that she cannot remember months-long stretches of 2021. She has verbally abused Father's mother. Mother once told her, seemingly threateningly, that there are no grandparents' rights in Texas. Mother has also had an outburst directed at a Department investigator during a removal. Mother has ceased communicating with the guardian ad litem. One of Husband's daughters described Mother as emotionally manipulative, getting people to lie for her. She once had K.L. lie to Department personnel about Father's being in the home. The psychologist, too, described Mother as having a "self-dramatizing style of pursuing praise in a manipulative, solicitous, or showy manner." The psychologist added that Mother is at "very high risk for experiencing chronic mental health and physical health problems" with little potential for that to change; has a "high probability of having a substance use disorder as well as a high probability of prescription drug abuse"; and gave impressions of major depressive disorder, generalized anxiety disorder, and PTSD. Shortly before trial, Mother, Mother's mother, and Husband jointly called Father's mother, berated her for helping the children to be placed with the foster parents and telling her that they will work to keep her from ever seeing the children again. Mother missed six visitations. She once texted the

15

conservatorship caseworker and told her to "consider moving to the Bahamas because, after this case is over, [the caseworker] will not want to see Texas again." She has also told the caseworker that she looked increasingly "dark and soulless." Mother breached her Safety Plan by discussing the suit with the children.

To sum up under the second, third, seventh, eighth, and ninth *Holley* factors, the evidence overwhelmingly pointed to termination. Mother has had years-long drug-abuse problems and has continued using drugs at least off-and-on during this suit. She failed to provide the children a safe and stable home life during the return-and-monitors. And she has exhibited varying misbehaviors otherwise. Some of this evidence was rebutted, to be sure, but overall, the evidence under these factors points overwhelmingly toward termination.

Under the fourth, fifth, and sixth factors, evidence showed that Mother's ability to parent was hampered by a relationship with Husband in which they cohabited but together caused strife, was lacking because of how the children were sometimes treated, and was outshone by how the foster parents have improved the children's outcomes. Mother admitted that her relationship with Husband was beset by codependency. The guardian ad litem knew their relationship to be turbulent, and the conservatorship caseworker saw Mother "violently yell" at Husband during one visitation. This suit began not long after Husband was jailed for domestic violence against Mother, but both sides of the relationship had clashed for some time. They had sometimes been heard by K.L. and E.L. "cussing and yelling." One of Husband's daughters has heard Mother verbally abuse Husband. Another of Husband's daughters thought that Mother and Husband's child was unsafe with Mother and testified in an effort to protect the children. Mother also has verbally abused K.L., making him cry. The children's therapist recommended against any joint therapy with Mother or Husband. By contrast, the evidence was undisputed that the foster parents have

16

provided the children with emotional support and guidance and have arranged for their treatment by mental-health professionals. Several witnesses noted how the children's behavior deteriorated when with Mother but then improved after returning to the foster parents' care. One of Husband's grown daughters has become a staple in the children's lives since they have been under the foster parents' care. The foster parents want to adopt the children. *See J.C. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-22-00621-CV, 2023 WL 2334980, at \*14 (Tex. App.—Austin Mar. 3, 2023, no pet.) (mem. op.) (explaining that best-interest analysis may involve "whether termination and adoption versus an impermanent foster-care arrangement would better serve the child's best interest").

On the other hand, there was evidence that Mother has been an attentive parent and has a support system in place among family and friends to help her care for the children. One among the support system, however, Mother's mother, abruptly left town even though she was at that time the children's placement, forcing the Department to rush to find a temporary caregiver. The grandmother explained that she left due to an acute health problem that has since subsided. Mother also completed many of the Department-directed services and actively participated in numerous appropriate visitations.

We hold that the modicum of evidence favorable to Mother on the issue of best interest of the children constituted more than a scintilla and was therefore legally sufficient. Accordingly, we overrule this part of the first appellate issue.

But when we take all the evidence together under the guidance of the *Holley* factors, we conclude that the trial court's finding against the Department under "best interest" for terminating Mother's rights was against the overwhelming weight of the evidence and clearly

wrong and was therefore factually insufficient. We therefore sustain this portion of the first appellate issue.

As for the second appellate issue, the appellants' brief takes the position that we should not reach it if we sustain the first issue: "If this Court reverses the decision of the trial court finding that the Department lacked evidence to prove that termination was in the children's best interests, then this section is moot." We agree that we do not need to decide the issue of possessory conservatorship regarding the parents. On remand for the new trial on "best interest" for termination, if Mother's and Father's parental rights are terminated, then they will no longer have standing to become the children's possessory conservators. If their rights are not terminated, then the trial court on remand will need to make a new order of conservatorship and possession that is in the children's best interest. *See* Tex. Fam. Code § 153.002; *see also id.* §§ 156.101-.409; 161.001-.304.

**CONCLUSION**

We hold that the evidence was legally sufficient but factually insufficient for the trial court to have found that termination of Father's and Mother's parental rights was not in K.L.'s and E.L.'s best interest, i.e., the trial court's failure to form a firm conviction or belief that Father's and Mother's parental rights should be terminated is contrary to the overwhelming weight of the evidence and clearly wrong. We therefore reverse the trial court's Order in Suit Affecting the Parent-Child Relationship, dated October 21, 2022, and remand this case for a new trial solely on the issue of "best interest" as to both Mother and Father of K.L. and E.L., and on such other issues as may be necessary, consistent with this opinion. *See In re K.D.*, 471 S.W.3d 147, 178 (Tex. App.—Texarkana 2015, no pet.) ("We reverse that portion of the trial court's judgment

finding that termination of Mother's parental rights is in K.D.'s best interest and remand the case to the trial court for a new trial on whether termination is in K.D.'s best interest."); *In re J. G. S.*, 574 S.W.3d 101, 129 (Tex. App.—Houston [1st Dist.] 2019, pet. denied) ("[W]e reverse the trial court's order terminating Cooper's parental rights for factually insufficient evidence on best interest. We remand that portion of the suit for additional proceedings consistent with this opinion."); *In re J. I. T.*, No. 01-17-00988-CV, 2018 WL 3131158, at *26 (Tex. App.—Houston [1st Dist.] June 27, 2018, pet. denied) (mem. op.) ("[W]e reverse the trial court's order terminating Pam's parental rights for factually insufficient evidence that termination is in the children's best interest. We remand that portion of the suit for additional proceedings consistent with this opinion."); *see also* Tex. R. App. P. 44.1(b). The trial on remand must begin no later than 180 days after we issue our mandate. *See* Tex. R. App. P. 28.4(c).

_____

J. Woodfin Jones, Justice

Before Justices Baker, Smith, and Jones*

Reversed and Remanded in Part

Filed: June 7, 2023

* Before J. Woodfin Jones, Chief Justice (Retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code § 74.003(b).